Mercer v. Gupta

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2012

(Argued: January 8, 2013                                    Decided: April 5, 2013)

Docket No. 12-3393

————————————

JAMES MERCER,

*Plaintiff - Appellant,*

v.

RAJAT K. GUPTA,

*Defendant - Appellee*.

————————————

Before: WINTER, POOLER, and CHIN, *Circuit Judges*.

Appeal from an order, memorandum order, and judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *J*.) granting defendant's motion to dismiss plaintiff's claim under Section 16(b) of the Securities Exchange Act, 15 U.S.C. § 78p(b). Because we find that defendant was not a "beneficial owner" of Goldman Sachs shares under Section 16 and Rule 16a-1, 17 C.F.R. § 240.16a-1, the judgment of the district court is AFFIRMED.

————————————

1

JEFFREY IVER TILDEN, Gordon Tilden Thomas & Cordell LLP, Seattle, WA (Mark A. Wilner, Gordon Tilden Thomas & Cordell, LLP, Davis Steven Preminger, Iran S. Birk, Keller Rohrback LLP, New York, NY, *on the brief*), *for Plaintiff-Appellant*.

GARY P. NAFTALIS, Kramer Levin Naftalis & Frankel LLP, New York, NY (Michael S. Oberman, Alan Roy Friedman, *on the brief*), *for Defendant-Appellee*.

Per Curiam:

Plaintiff-Appellant James Mercer ("Plaintiff") appeals from a December 23, 2011 order, July 28, 2012 memorandum order, and July 31, 2012 judgment of the district court (Rakoff, *J.*), which granted Defendant-Appellee Rajat K. Gupta's ("Defendant") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff had brought a derivative suit on behalf of the Goldman Sachs Group, Inc. ("Goldman Sachs") under Section 16(b) of the Securities Exchange Act, 15 U.S.C. § 78p(b), seeking to require Defendant to disgorge all profits from short-swing transactions in Goldman Sachs shares. The district court held that, while Defendant was a statutory insider for purposes of Section 16(b), Plaintiff had failed to plausibly allege that Defendant was a "beneficial owner" of Goldman Sachs shares under Section 16(b) and Rule 16a-1, 17 C.F.R. § 240.16a-1, and it dismissed the action. We agree that Plaintiff failed to plead that Defendant was a beneficial owner. We also decline to extend the term "beneficial owner" to encompass, *perforce*, "tippers" who provide insider information, in exchange for payment, to another party who engages in the short-swing trading of shares. Accordingly, we affirm the orders and judgment of the district court.

Affirmed.

2

**BACKGROUND**

Plaintiff brings suit pursuant to Section 16(b), which is designed to prevent statutory insiders—a securities issuer's "directors, officers, and principal stockholders"—"from engaging in speculative transactions on the basis of information not available to others." *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 173-74 (2d Cir. 2012) (internal quotation marks omitted). It requires statutory insiders "to disgorge all profits realized from" short-swing transactions, the "purchase and sale (or sale and purchase) of the same security made within a six month period." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 43 (2d Cir. 2012). "Section 16(b) requires an insider to disgorge any profit realized by *him* from short-swing transactions." *Roth v. Jennings*, 489 F.3d 499, 516 (2d Cir. 2007) (internal quotation marks omitted). An insider who does not directly own the securities purchased and sold can nonetheless "realize profit" for Section 16(b) purposes if he is determined to be a "beneficial owner of the securities. *See Morales v. New Valley Corp.*, 968 F. Supp. 139, 143 (S.D.N.Y. 1997) ("[A]n insider who is the beneficial owner of another individual's securities can be held liable under § 16(b) for that individual's purchase and sale of the security within six months."). Rule 16a-1(a)(2) defines beneficial owner as "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities."[1] 17 C.F.R. § 240.16a-1(a)(2).

---

[1] "Under section § 16(b), the concept of 'beneficial owner' has two distinct applications." *Morales*, 968 F. Supp. at 143 (S.D.N.Y. 1997). "The first definition is used to determine who qualifies as an insider of an issuer by virtue of being the beneficial owner of more than ten percent of any class of equity securities of the issuer." *Id.* at 143-44 (citing 17 C.F.R. § 240.16a–1(a)(1)). "The second definition, and the one relevant for this [action], concerns . . . liability under § 16(b)." *Id.* at 144 (citing 17 C.F.R. § 240.16a–1(a)(2)).

3

Here, Plaintiff alleges that Defendant was a statutory insider of Goldman Sachs who realized short-swing profits from Goldman Sachs shares. It is uncontested that Defendant was, at all relevant times, a statutory insider, due to his position as a member of the Goldman Sachs board of directors. The parties disagree, however, as to whether Plaintiff alleged facts sufficient to establish that Defendant beneficially owned shares of Goldman Sachs. Plaintiff alleges that Defendant beneficially owned shares that Raj Rajaratnam traded on the short swing through the Galleon Group ("Galleon"), a group of hedge funds Rajaratnam founded and formerly controlled.

Plaintiff alleges that, throughout 2008, Defendant repeatedly called Rajaratnam after learning information relevant to Goldman Sachs's share price. After these calls, Galleon would engage in short-swing trading of Goldman Sachs shares, earning profits or avoiding losses. Plaintiff also alleges that Defendant was a director of, and had a balance of over $16 million in, Voyager Multi-Strategy Fund ("Voyager"), a Galleon master fund that invested in other Galleon hedge funds. Finally, Plaintiff alleges that Defendant knew that Rajaratnam paid another party, Anil Kumar, in exchange for insider information.

From these factual allegations, Plaintiff asserts three theories for why Defendant is a beneficial owner of Goldman Sachs shares: (1) Rajaratnam made quid pro quo payments to Defendant in exchange for insider information; (2) Defendant was a director of, and had a financial interest in, Voyager; and (3) Defendant had the "opportunity to profit" in Galleon due to his close business relationship with Rajaratnam.

On December 23, 2011, the district court rejected Plaintiff's theories and dismissed the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The district court reaffirmed the dismissal in a

4

July 28, 2012 memorandum order and July 31, 2012 judgment.[2]

## DISCUSSION

"We review *de novo* a district court's dismissal of a complaint for failure to state a claim under Federal Rules of Civil Procedure Rule 12(b)(6), accepting all factual allegations as true, but giving no effect to legal conclusions couched as factual allegations." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (internal quotation marks omitted).

At issue in this case is whether, accepting all of Plaintiff's factual allegations as true, Defendant was a beneficial owner of Goldman Sachs shares under Section 16(b) and Rule 16a-1. The "term beneficial owner shall mean any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, *has or shares a direct or indirect pecuniary interest* in the equity securities." 17 C.F.R. § 240.16a-1(a)(2) (emphasis added). "The term pecuniary interest in any class of equity securities shall mean the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." *Id.* § 240.16a-1(a)(2)(i). Rule 16a-1 includes a non-exhaustive list of "indirect pecuniary interest[s]." *See id*. § 240.16a-1(a)(2)(ii).

Plaintiff asserts three theories as to why Defendant had pecuniary interests in and, therefore, beneficial ownership of, Goldman Sachs shares: (1) Rajaratnam made quid pro quo payments to Defendant in exchange for insider information; (2) Defendant was a director of, and had a financial interest in, Voyager, a Galleon master fund; and (3) Defendant had the "opportunity to profit" in Galleon due to his close business relationship with Rajaratnam.

---

[2] In its memorandum order the district court noted that Defendant also moved to dismiss Plaintiff's claim as barred by the statute of limitations, but did not address the issue due to its decision on the merits. Because we affirm the district court, we also decline to address the issue.

5

We reject Plaintiff's assertions for substantially the reasons stated in the district court's memorandum order. First, with respect to the quid pro quo payments, the Complaint fails to rise "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's allegation that Defendant knew about Rajaratnam's payment to Anil Kumar is not an allegation that Rajaratnam paid Defendant. Moreover, assuming *arguendo* that Plaintiff adequately pleaded that Rajaratnam paid Defendant, such payments do not amount to a pecuniary interest. Section 16(b) requires that the defendant himself "realized *profits* from short-swing transactions." *Roth* 489 F.3d at 517 (emphasis added); *see also* 17 C.F.R. § 2410.16a-1(a)(2)(ii)(C) (stating that a performance-related fee is a pecuniary interest but "a right to a nonperformance-related fee alone" is not). Plaintiff has failed to adequately allege that Defendant received profits from Goldman Sachs shares as opposed to payment for insider information.

Next, Plaintiff alleges that Defendant had a pecuniary interest in Goldman Sachs through his financial stake in Voyager, a Galleon master fund that owned interests in other Galleon entities. Because Defendant had the "opportunity[,] indirectly, to profit or share in any profit derived" by Voyager through its ownership of other Galleon entities that, in turn, owned Goldman Sachs shares, Defendant's financial stake is a pecuniary interest. However, Rule 16a-1 creates a "safe harbor" where "a shareholder shall not be deemed to have a pecuniary interest in the portfolio securities held by a corporation or similar entity in which the person owns securities if the shareholder is not a controlling shareholder of the entity and does not have or share investment control over the entity's portfolio." 17 C.F.R. § 240.16a-1(a)(2)(iii); *see also Feder v. Frost*, 220 F.3d 29, 34 (2d Cir. 2000). The "safe harbor," as an affirmative defense, may be

6

raised on a motion to dismiss if the defense is based on facts appearing on the face of the complaint. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003). Plaintiff does not allege that Defendant is a controlling shareholder but *does* allege that Defendant had investment control. While the term "investment control" is not defined in Rule 16a-1, at least one district court within our circuit has defined "control," borrowing from Rule 12b-2, as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *See, e.g.*, *Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co. Ltd.*, 194 F. Supp. 2d 232, 243 (S.D.N.Y. 2002) (quoting 17 C.F.R. § 240.12b-2).

Here, Plaintiff alleges that Defendant "knew and intended" that his insider information would cause Galleon to trade Goldman Sachs shares. However, *influence* over investment decisions is not akin to control. Plaintiff also alleges that Defendant had investment control because he was on the board of Voyager, a Galleon master fund that held interests in other Galleon hedge funds that owned Goldman Sachs shares. While this may suggest control over Voyager, it does not allow for an inference that Defendant had investment control over the Galleon funds that actually traded the Goldman Sachs shares. Plaintiff has failed to adequately plead that Defendant had investment control.

Finally, Plaintiff alleges that Defendant profited from Galleon's Goldman Sachs transactions due to his close business relationship with Rajaratnam. Plaintiff alleges that Rajaratnam gave Defendant the "opportunity . . . to profit" in the Goldman Sachs transactions by giving him an interest in Voyager in exchange for insider information. We have held, however,

7

that the "presumption" that a defendant "derived *some pecuniary benefit*" from another's short-swing transactions is not enough to establish pecuniary interest. *Roth*, 489 F.3d at 516-17. Business dealings alone do not establish beneficial ownership.

Ultimately, the issue in this case is whether the term "beneficial ownership" can encompass the relationship between Defendant and Rajaratnam, who were, respectively, tipper and tippee of insider information. It is clear that Section 16(b) does not apply *perforce* to tippees. *See Blau v. Lehman*, 368 U.S. 403, 411-12 & n.12 (1962); *Provident Secs. Co. v. Foremost-McKesson, Inc.*, 506 F.2d 601, 612 n.6 (9th Cir. 1974), *aff'd*, 423 U.S. 232 (1976). Plaintiff's Complaint requires us to ask whether Section 16(b) applies to tippers, merely because of the tipper-tippee relationship. The regulations, because they are non-exhaustive, are not dispositive of the issue. 17 C.F.R. § 240.16a-1(a)(2)(ii) (The "term indirect pecuniary interest in any class of equity securities shall include, *but not be limited to*" the listed interests.) (emphasis added); *Id.* § 240.12b-2 ("The term 'control' . . . means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, *or otherwise*.") (emphasis added). While we are not bound by the examples in the regulations, we are mindful that Section 16(b) has "narrowly drawn limits." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 321 (2d Cir. 1998) (quoting *Foremost McKesson*, *Inc. v. Provident Secs. Co.*, 423 U.S. 232, 251 (1976)). It is significant that Congress considered and rejected draft language that would have created a provision similar to Section 16(b) applicable to tippees. *Blau*, 368 U.S. at 412 n.12. Plaintiff may "present persuasive policy arguments that the Act should be broadened in this way to prevent the unfair use of information more effectively than can be accomplished by leaving the

8

Act so as to require forfeiture of profits only by those specifically designated by Congress to suffer those losses." *Id.* at 411 (internal quotation marks omitted). However, we hold that, absent any indication from Congress to the contrary, Section 16(b) does not apply *perforce* to tippers of insider information.

## CONCLUSION

Plaintiff has failed to allege that Defendant had "pecuniary interest" in Goldman Sachs shares that would make him a "beneficial owner" of the shares under Section 16(b) and Rule 16a-1. Accordingly, the judgment of the district court is AFFIRMED.